**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>EDWARD PAPAMECHAIL,<br><br>                              Debtor<br><br>EDWARD PAPAMECHAIL,<br><br>                              Plaintiff<br><br>v.<br><br>STIGLIANO, INC., and ROCCO VIGORITO,<br><br>                              Defendants | Chapter 7<br>Case No. 17-10032-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 17-1133 |

**MEMORANDUM OF DECISION**

By his amended complaint in the above-captioned adversary proceedings, plaintiff and chapter 7 debtor Edward Papamechail ("the Debtor" or "Edward") seeks compensatory and punitive damages against the defendants under 11 U.S.C. § 362(k)(1) for alleged violations of the automatic stay. After a trial, the Court now enters the following as its findings of fact and conclusions of law.

I.   **Procedural History**

On January 5, 2017, the Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing the bankruptcy case in which this adversary proceeding arises. On March 9, 2017, the case was converted to one under chapter 7 of the Bankruptcy Code, and it has remained a case under that chapter.

On October 24, 2017, the Debtor filed in this chapter 7 case the complaint commencing this adversary proceeding, which complaint he has amended once (as amended, "the Complaint"). It names

two defendants: Stigliano, Inc. ("Stigliano"), a Massachusetts corporation, and its president and sole owner, Rocco Vigorito ("Vigorito") (together, "the Defendants"). By the Complaint, the Debtor seeks compensatory and punitive damages under 11 U.S.C. § 362(k)(1) for violations of two parts of the automatic stay in 11 U.S.C. § 362(a): part (a)(1), by continuing and prosecuting an eviction action against him in state court; and part (a)(3), by taking various acts to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate, all of which, the Debtor contends, caused him severe emotional distress and injury to and loss of personal and business assets.[1] For these alleged violations, the Complaint demands compensatory and punitive damages and attorney's fees. In answering, defendant Stigliano asserted (among other defenses) the affirmative defense of setoff, stating as the basis thereof that the Debtor owes to Stigliano compensation for his use and occupancy of the premises in issue, and that the Debtor's recovery herein, if any, should be offset by the use and occupancy owed.

In a joint pretrial memorandum, the parties stipulated to a limited number of facts. They tried the remaining factual issues over three days, during which the Court heard the testimony of six witnesses: the Debtor, Vigorito, Pamela Papamechail, Jordan Shapiro, Philip Romano, and Ronald Wronski. After trial, the parties submitted proposed findings and conclusions, made closing arguments, and thereafter submitted briefs on the Defendants' good faith defense.

After taking the matter under advisement, the Court issued an order to show cause why it should not take judicial notice of (i) the schedules and statements of financial affairs that the Debtor filed in Cases No. 17-10032 [docs. #22 and #70] and No. 17-12919 [docs. # 19] and (ii) the fact that the the Debtor and Pamela Papamechail have between them commenced the seven bankruptcy cases

---

[1] The Complaint further suggests that it is also based on violations of the stay in part (a)(4) of "any act to . . . enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). However, the Debtor has not pressed this contention; he made no mention of part (a)(4) or of acts to enforce a lien in his proposed findings and conclusions, his closing arguments, or the Joint Pretrial Memorandum. I conclude that he has abandoned his reliance on part (a)(4).

enumerated above between 2010 and 2017. The Debtor filed no response to this order to show cause, whereupon for the reasons set forth in the order to show cause, the Court took judicial notice of (i) the schedules and statements of financial affairs that the Debtor filed in Cases No. 17-10032 [docs. #22 and #70] and No. 17-12919 [docs. # 19] and (ii) the fact that the Debtor and Pamela Papamechail have between them commenced the seven bankruptcy cases enumerated above between 2010 and 2017. These shall constitute part of the evidentiary record in this adversary proceeding.

At the same time and in the same document as the order to show cause regarding judicial notice, the Court further ordered the Debtor to show cause why he should not now be judicially estopped in the present adversary proceeding from seeking relief as to assets that he did not disclose on the schedules and statement of financial affairs in Case No. 17-10032.  The Debtor did answer this order in writing, opposing the proposed judicial estoppel. The Court then reopened the evidence to permit the Debtor to adduce evidence in support of his response to the order to show cause and for the Defendants to submit evidence concerning that response and the issue it addresses; and a further day of trial was held for that purpose, at which the Debtor and Pamela Papamechail.

## II.      Jurisdiction and Authority

This is a proceeding to recover damages for violation of the automatic stay.  It arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b).  By standing order of reference, the District Court has referred the matter to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1).  The bankruptcy court accordingly has authority under that subsection to enter final judgment on the complaint.

**III.     Findings of Fact**

1. On January 5, 2017, Edward filed in this court a petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing the bankruptcy case in which this adversary proceeding arose and was filed, Case No. 17-10032.

2. Prior to the filing of case No. 17-10032, Edward's wife, Pamela Papamechail ("Pamela") had commenced five other bankruptcy cases between 2010 and 2016: specifically, cases No. 10-16772, No. 11-20445, No. 12-18899, No. 14-14475, and No. 16-11660, all in the District of Massachusetts.  With the two cases discussed in these findings, Edward and Pamela have together filed a total of seven cases since 2010.

3. At the time of his filing of Case No. 17-10032, Edward and Pamela owned the real property located at 18 Boston Street, Middleton, Massachusetts ("the Real Property"), and the Real Property was encumbered by a mortgage they gave to Chesterton Capital, LLC ("Chesterton").

4. The Real Property had on it a house that included three residential units that Edward and/or Pamela leased to third parties. The Real Property also included two separate garages, known as the Lower Garage and the Upper Garage.[2] Edward and Pamela did not reside at the Real Property. As of the commencement of Case No. 17-10032, they, or one or the other of them, used the Real Property and the Upper and Lower Garages as the base of operations for a small, unincorporated business known as Danvers Cesspool. Edward had previously been involved in Danvers Cesspool, but by the time of this bankruptcy filing, illness had sidelined him, and the business was carried on solely by Pamela.

5. On March 9, 2017, Case No. 17-10032 was converted to one under Chapter 7, and to date it has remained a case under that chapter.  Upon the case's conversion to chapter 7, a trustee

---

[2] It is unclear whether the Upper Garage and the Lower Garage are separate buildings or separate parts of one building.

4

was appointed who has continued to serve in that capacity. On June 7, 2019, the chapter 7 trustee filed a report of no distribution. He has not filed a notice of abandonment as to any asset of the estate.

6. On April 25, 2017, on a contested motion by Chesterton for relief from the automatic stay, the Court entered in Case No. 17-10032 an order granting the motion (the "Relief from Stay Order"). The Relief from Stay Order was entered pursuant to both § 362(d)(2) and § 362(d)(4) and expressly stated that the relief thereby being granted was being granted to Chesterton and for the purpose of foreclosing its mortgage on the Real Property. The Relief from Stay Order did not state that it was also being given to Chesterton's successors and assigns; nor did it indicate that it was being given for any purpose other than to foreclose Chesterton's mortgage.

7. Stigliano acquired ownership of the real property on or about June 16, 2017, from Chesterton Capital, LLC at a foreclosure auction. (Stipulated Facts, ¶ 1) The evidence shows that Chesterton Capital LLC executed a foreclosure deed dated June 14, 2017, that conveyed Chesterton's title to the real property at 18 Boston Street, Middleton, Massachusetts, to Stigliano. Inc.[3]

8. Edward alleges that after Stigliano acquired ownership of the Real Property, the Defendants interfered with his ownership rights as to numerous items of personal property that he stored at the Real Property, including by theft, sequestration, destruction, or disposal. The items in issue are enumerated in only one place, a 12-page handwritten list that was prepared by Pamela and introduced into evidence as Debtor's Exhibit 6 ("the List"). In the List, Pamela identifies approximately 91 items and assigns a value to each.

---

[3] Though unexplained, the two-day discrepancy as to the date on which Stigliano acquired title to the Real Property is, for present purposes, immaterial.

9. The specified value for each item, Pamela testified, is the replacement value of that item as she ascertained it through internet research. As to no item did she identify the source of the information in question (except that the source was on the internet). Edward testified that as to a few of the items, he, not Pamela, did the valuation research, and he obtained the values by calling a dealer and inquiring about the present cost of replacing the items in question.

10. The List included sixteen items that Pamela valued at $1,000.00 or more:

| ITEM | ASCRIBED VALUE |
|---|---|
| 15 pieces granite curbing | $3,300.00 |
| 10 suction hoses with fittings | $1,250.00 |
| A framing nailer and finishing air guns | $1,4000.00 |
| A satchel of tools | $2,000.00 |
| 17 loads of grindings | $4,250.00 |
| 15 loads of fill | $2,250.00 |
| 15 loads of loam | $8,775.00 |
| Tires on plumbing truck, punched in with a sharp object. To remove and install new tires: | $1,200.00 |
| Tractor rear large tire punched in with a sharp object. To remove and instal: | $1,800.00 |
| An 8-foot quick-mount Fisher plow | $4,400.00 |
| 40-foot trailer load full of antique items | $20,000.00 |
| A tractor | $15,500.00 |
| 4 storm drains, grate and body, heavy duty | $1,300.00 |
| A trailer box | $2,500.00 |
| A box truck | $1,000.00 |
| A wood splitter | $4,000.00 |

11. Edward presented no testimony—from himself, Pamela, or anyone else—or evidence in any form that the items on the List, or any one or group of them, were his on January 5, 2017, when he filed the bankruptcy petition commencing Case No. 17-10032. The fact that a particular item was located on the Real Property during the months in question does not resolve the issue. Any given

item could as easily have been Pamela's as Edward's or could have been stored on the Property for another owner.

12. The List itself includes evidence that one of the items—certain "train jacks" valued at $250.00—belonged not to Edward or Pamela but to an entity identified as "Jacks building." Specifically, as to the train jacks, Pamela made a parenthetical notation on the List that "Jacks building wants it back."[4]

13. In Case No. 17-10032 and on February 1, 2017, Edward filed Schedule A/B, a schedule of the real and personal property that he owned as of the commencement of that bankruptcy case. As to this schedule, he filed a declaration, which he signed on February 1, 2017, stating: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct." In this schedule, he listed none of the personalty that he now contends he owned at the time of his bankruptcy filing and consequently, by operation of 11 U.S.C. § 541(a)(1), became property of his bankruptcy estate. Among other things, the schedule asked, at Part 5, item 37, "Do you have any legal or equitable interest in any business-related property?" The Debtor responded, "no." At Part 7, item 53, the schedule asked: "Do you have any other property of any kind you did not already list?" Edward again responded, "no." Had he owned the personalty in question on the date of the petition, he would have been obligated to list the personalty somewhere on Schedule A/B, in response to item 53 if nowhere else. Also, as many of the items are related to the plumbing and septic businesses that Pamela and Edward carried on, if Edward had an interest in any of the personalty, he was obligated to answer item 37 in the affirmative.

14. In the same case and on the same day, Edward also filed a Statement of Financial Affairs (SOFA). He signed the SOFA under penalty of perjury, expressly averring that "I have read the answers on this Statement of Financial Affairs and any attachments, and I declare under penalty of

---

[4] The discrepancy between the singular and the plural is in the List.

perjury that the answers are true and correct." At item 22, the SOFA asked: "Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?" Edward again responded, "no." This answer contradicts the testimony of Edward and Pamela at trial that Edward stored at the Real Property the numerous items of personal property for which he now seeks compensation.

15. In the same case on April 14, 2017, Edward filed an amended statement of financial affairs ("Amended SOFA"), which he signed under penalty of perjury. At item 22, the Amended SOFA asked: "Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?" Edward again responded, "no."

16. On August 17, 2017, Edward filed in this Court another petition for relief under chapter 13 of the Bankruptcy Code, thereby commencing another bankruptcy case, Case No. 17-12919. (Stipulated Facts, ¶ 2) This second case has at all times since its filing been a case under chapter 13.

17. On August 31, 2017 and in Case No. 17-12919, Edward filed a schedule of the assets he owned as of the date of the commencement of that case, which schedule he signed under penalty of perjury. In this schedule, he listed none of the personalty that is at issue in this adversary proceeding. Among other things, the schedule asked, at Part 5, item 37, "Do you have any legal or equitable interest in any business-related property?" The Debtor responded, "no." At Part 7, item 53, the schedule asked: "Do you have any other property of any kind you did not already list?" The Debtor again responded, "no."

18. Also on August 31, 2017 and in Case No. 17-12919, Edward filed a statement of financial affairs that he signed under penalty of perjury. In it, he averred, at item 22, that he had not stored property in a place other than his home within one year before he filed the petition commencing that case.

8

19. As to one item on the list, a "4 man aluminum canoe" that Pamela valued at $400.00, Edward admitted on cross-examination that he failed to list it on the schedule of assets he signed under penalty of perjury and filed in Case No. 17-12919. Edward was unable to explain the discrepancy between his testimony that the Defendants had interfered with *his* rights as to this asset and his omission of the asset from his schedules except by stating that, though he had signed the schedules, he'd had nothing to do with their preparation. Pamela, he said, had handled this for him. Pamela and the attorney through whom Edward filed the schedules testified at trial, but neither attempted to explain the discrepancy. I conclude that both Edward and Pamela are not to be believed as to the existence and ownership of the assets in issue or as to any fact in dispute.

20. I have no basis on which to determine, as to any given item on the List, that (if it existed at all) it belonged to Edward and not entirely to Pamela or to another person or entity. The evidence does not preponderate in favor of a finding that the items on the List belonged to Edward as of the commencement of Case No. 17-10032 or at any later date relevant to this proceeding. Edward has failed to carry his burden on this issue. As to all the items on the List, there is little or no evidence, other than the List itself, that they even existed or that, if they existed, they were kept at the Real Property. According to the sworn averments of the Debtor in the Schedule A/B and SOFA and Amended SOFA that he filed in Case No. 17-10032, and the Schedule A/B and SOFA that he filed in Case No. 17-12919, he had no interest in any of the listed items, and he had no personal property stored at any location other than his home.

21. As to each item on the List, I find that Edward has failed to prove by a preponderance of the evidence that it existed, that it was kept at the Real Property, that it belonged to Edward and not another, and that it had the replacement value stated on the List.

22. When ordered to show cause why he should not be judicially estopped in the present adversary proceeding from seeking relief as to assets that he did not disclose on the schedules and

SOFA that he filed in Case No. 17-10032, Edward responded by submitting first an affidavit dated June 22, 2019 [Exhibit 1 to doc. #71, the "Original Affidavit"], signed both by both himself and Pamela, and then a supplemental affidavit [doc. #75, the "Supplemental Affidavit"].

23. In the Original Affidavit, Edward and Pamela averred (in relevant part): "When we met with our counsel to file the various petitions over the years, we did not believe that the items in the garage had any value and we did not discuss the same with counsel.  We did not even think about the items in the garage as items we should be separately disclosing in our petitions. They were older items generally usable (but not presently being used) in Edward's plumbing business stored in the garage, such as tools, grindings, wires, and general supplies, and items used in either the sewer cleaning or plumbing business that were old and we believed had no value to us at the time. We totally forgot about the existence of the items in the garage until the Defendants started to remove and take them[.]"

24. In their Supplemental Affidavit, Edward and Pamela made further averments at greater length, but to the same effect:  in filling out the schedules, we didn't even think of the items as needing to be disclosed; and "we totally forgot about the existence of the items in the garage or the yard until the Defendants started to remove and take them."

25. These responses of Edward and Pamela in their Original Affidavit and Supplemental Affidavit are not credible. Neither attempts to explain why, in Case No. 17-10032 and also Case No. 17-12919, they answered item 22 of the SOFA by stating that at item 22 Edward had not stored property in a place other than his home within one year before he filed the petition commencing those cases.  I fail to see how they can have answered that question in the negative and not been prompted by it to remember the considerable number of items of personal property kept at the Real Property. Also, from their testimony at trial, Pamela and Edward made clear that during the summer of 2017, after their interest in the Real Property had been foreclosed on, Pamela spent a

great deal of time at the Real Property and was almost daily involved in the business of figuring out what to do with all the personalty stored there: they had to move it off the Real Property. In fact, they both allege that it is during the summer months that the Defendants began interfering with their rights to that personalty, causing the consternation that prompted their complaint in this adversary proceeding. It is inconceivable that Edward and Pamela were not, when they filed the schedules and SOFA in Case No. 17-12919 on August 31, 2017, fully aware of and concerned about the personalty that was stored at the Real Property. They state that the petition commencing that case was filed in urgency, but, even if this were true, it would not explain the false answers; the schedules and SOFA were not filed with the petition but two weeks later, without urgency. It is clear to me that Edward, with Pamela's assistance, completed the schedules and SOFA in Case No. 17-12919 with either intent to deceive or reckless disregard for the truth regarding the personalty kept at the Real Property. I have no reason to conclude that their misstatements in Case No. 17-10032 were of a different genesis, especially because (i) when that case was filed, the Edward and Pamela were facing ongoing attempts to foreclose on the Real Property and must have been concerned about the personalty they stored there, and (ii) their protestations of innocent forgetfulness are simply not credible.

**IV.    Discussion**

The Complaint seeks relief under § 362(k)(1).  Subsection (k)(1) provides that "[e]xcept as provided in paragraph (2)," which has no application here, "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). Recovery under this subsection thus requires proof of, among other things, a violation of a stay provided by § 362. It is incumbent on the complaining debtor to identify the particular stays in § 362 that were violated and, as to each, the particular acts that violated it. In the Complaint, Edward cites three parts of the stay that

11

(by suggestion more than express allegation) he contends the defendants violated: stays in § 362(a)(1), (a)(3), and (a)(4).

    a. **Part (a)(4)**

Without expressly having said so, Edward now appears to have abandoned any reliance on subsection (a)(4). That subsection stays "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a)(4). The Complaint mentions no lien and alleges no act by either defendant to create, perfect, or enforce one. No evidence was presented at trial of any act by either defendant to create, perfect, or enforce a lien. And Edward seeks no conclusion of law under subsection (a)(4). To be clear, I now find and conclude that Edward has failed to establish a violation of the stay in subsection (a)(4).

    b. **Part (a)(1)**

It is unclear whether Edward continues to maintain that the Defendants violated a stay in subsection (a)(1); he has proposed no conclusion of law thereunder. Subsection (a)(1) stays

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1). The factual gravamen of the Complaint's allegation as to this subsection—the only judicial, administrative, or other action or proceeding against Edward that either defendant is alleged or proven to have brought during this bankruptcy case—was Stigliano's eviction action in Salem District Court. Stigliano could not have brought that action before the commencement of the bankruptcy case (that is, Case No. 17-10032) because Stigliano did not own the Real Property before the beginning of that case. Stigliano acquired title to the Real Property only during the case. Subsection (a)(1) stays only those actions or proceedings that "[were] or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the

12

commencement of the case under this title[.]" 11 U.S.C. § 362(a)(1). Because the eviction action could not have been brought before the commencement of the bankruptcy case and (insofar as it may be characterized as a proceeding to recover a claim) did not concern a claim that arose before the commencement of the bankruptcy case, the eviction action cannot have constituted a violation of the stay in subsection (a)(1). For this reason, insofar as Edward may continue to rely on this subsection, I now find and rule that he has failed to establish a violation of its stay.

    **c.  Part (a)(3)**

This leaves subsection (a)(3), which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]" 11 U.S.C. § 362(a)(3). Edward does clearly continue to rely on this subsection. Nonetheless, though (a)(3) contains three separate stays, he does not specify which of the three he contends was violated. Nor does he specify the property that he contends was the subject of each violation. Nor does he devote any effort to establishing, as to each or any given item, that it was "property of the estate" or "property from the estate."

    **i.  The Stays Concerning Property *of* the Estate**

As noted, subsection (a)(3) contains three stays. Two concern property *of* the estate: the stays of (i) any act to obtain possession of property of the estate and (ii) any act to exercise control over property of the estate. Each of these requires identification of the particular property in issue and proof that it was property of the estate. Edward clearly implies that the property of the estate in issue included the items of personalty that are identified on the 12-page itemized list that Pamela prepared and that is Plaintiff's Exhibit 6. Edward may also contend—but this is much less clear—that the property of the estate in issue included the Real Property, too.

The estate in question is the bankruptcy estate that was created upon Edward's commencement of his bankruptcy case. See 11 U.S.C. § 541(a) ("The commencement of a case under section 301 . . . of

13

this title creates an estate."). The estate is comprised of the property specified in the seven paragraphs of § 541(a). 11 U.S.C. § 541(a) ("Such estate is comprised of all the following property, wherever located and by whomever held[.]"). For failure of Edward to indicate otherwise, it appears that he is relying on paragraph (a)(1), which brings into the estate, subject to exceptions not applicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Therefore, as to each item of property that forms the basis of his claim under § 362(k)(1), Edward bore the burden of establishing that he held, as to that item, a legal or equitable interest in it as of the commencement of his bankruptcy case.

As to the personalty, including each and every item thereof, I have found that Edward has failed to carry that burden. By virtue of this finding, Edward has not established that the personalty was property of the estate. Consequently, his claims with respect to the personalty under the two stays in § 362(a)(3) that concern property of the estate must be dismissed.

In addition, where Edward failed to list the personalty in the schedules of personal property that he filed in this case and has failed to demonstrate that this omission was not knowing or intentional of the result of reckless disregard in completing the schedules and SOFA, I hold that he is judicially estopped from seeking damages for violation of the automatic stay as to the items in issue. *Guay v. Burack*, 677 F.3d at 17 (affirming dismissal of claims debtor had failed to schedule, and noting that "it is well established that a failure to identify a claim as an asset of a bankruptcy proceeding is a prior inconsistent position that may serve as the basis for application of judicial estoppel"), and *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.1993) ("[H]aving obtained judicial [bankruptcy] relief on the representation that no claims existed, [plaintiff] cannot now resurrect them and obtain relief on the opposite basis."); *see In re Stephen Angelo*, 480 B.R. 70, 93-97 (Bankr. D. Mass. 2012).

As to the Real Property, Edward has established, and it is undisputed, that Edward held an interest in the Real Property upon the commencement of his bankruptcy case, but that is not the end of the matter. Section 362(c)(1) of the Bankruptcy Code states that "the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The stays in § 362(a)(3) of acts to obtain possession of, or to exercise control over, property of the estate are each a "stay of an act against property of the estate" within the meaning of § 362(c)(1). Upon Chesterton's execution of the foreclosure deed by which it conveyed Edward's interest in the real property to Stigliano, Edward's equity of redemption as to the Real Property—which equity of redemption was then, by virtue of § 541(a)(1), property of the estate—was extinguished. This extinguished the estate's interest in the Real Property and, by operation of § 362(c)(1), terminated the application of the "property of the estate" stays in § 362(a)(3)—those of acts to obtain possession of, or to exercise control over, property of the estate—to acts against the Real Property. I therefore conclude that at all relevant times—that is, at all times from and after the moment of Stigliano's purchase of the Real Property—the Defendants' acts to obtain possession of or to exercise control over the Real Property cannot have constituted violations of these two stays in § 362(a)(3). Consequently, Edward's claims with respect to the Real Property under the two stays in § 362(a)(3) that concern property *of* the estate must be dismissed.

### ii. The Stay Concerning Property *from* the Estate

The third stay in § 362(a)(3) is of "any act to obtain possession . . . of property *from* the estate." 11 U.S.C. § 362(a)(3) (emphasis added). The meaning, scope, and application of this stay are unclear. Edward articulates no position as to what specifically it stays and how it was violated here. I therefore conclude that he has abandoned any reliance on this part of subsection (a)(3).

15

### d. Conclusion as to § 362(k)(1)

For these reasons, I conclude that Edward has failed to establish the first requirement of a claim for damages under § 362(k)(1), that the defendant violated a stay in § 362. It follows that he is entitled to no relief under § 362(k)(1).

### e. Extraneous Matters

Edward's complaint is based entirely on § 362(k)(1). Nonetheless, in his proposed findings and conclusions, he also seeks relief on two other grounds.

First, he seeks an award of sanctions under Fed. R. Bankr. P. 9011(c) against the Defendants' attorney for filing and pursuing the Defendants' eviction action against them.  Edward is not entitled to this relief for many reasons, procedural and substantive. First, the attorney is not a named defendant, and this action was not tried against him. Second, the applicable rule of bankruptcy procedure governs procedure in bankruptcy cases, but the conduct in question occurred in other proceedings elsewhere. Third, sanctions for violation of Rule 9011 require a motion, but Edward has filed no motion for this relief. Fourth, the gravamen of this demand is that the attorney prosecuted an eviction action without a good faith belief or argument that the automatic stay did not stay the eviction action, but Edward has failed to show that the eviction action *was* stayed by a stay in § 362(a).

Second, Edward seems to contend that he is entitled to damages under Massachusetts tort law for the emotional distress that, he alleges, the defendants caused him by the conduct complained of here, provided only that he proves the four elements of the Massachusetts tort of intentional infliction of emotional distress.  See *Agis v. Howard Johnson Co.*, 371 Mass. 140, 144–45, 355 N.E.2d 315 (1976). If Edward is arguing that he is entitled to emotional distress damages under § 362(k)(1) without proof of a violation of the stay, I reject that argument because a violation of the stay is an express and necessary requirement for relief of any kind under § 362(k)(1). If Edward is now seeking damages on the entirely separate basis of the Massachusetts tort of intentional infliction of emotional distress, I reject that

16

argument because his complaint pleads no claim for relief under Massachusetts tort law, the adversary proceeding was not tried on that theory,[5] and it would be unfair to the Defendants to entertain that theory at this juncture.[6]

### V.   Conclusion

For the reasons set forth above, Edward has established no right to relief.  The complaint shall be dismissed on its merit.

Date:  February 18, 2020

_____
Frank J. Bailey
United States Bankruptcy Judge

---

[5] Had he pled a count for intentional infliction of emotional distress, this court could not have tried it. See 28 U.S.C. § 157(b)(5) (requiring district court to order that personal injury tort claims be tried in the district court).

[6] For what it may be worth, Edward has failed to show either (i) that such emotional distress as he suffered was so severe that no reasonable person could be expected to endure it or (ii) that defendants' precipitating behavior was extreme, outrageous, and beyond all possible bounds of decency. Therefore, on the evidence presented, he would be entitled to no relief for intentional infliction of emotional distress under *Agis v. Howard Johnson Co.*, 371 Mass. at 144–45.